DODGE & OLCOTT, INC. *v.* UNITED STATES (No. 4939)[1]

United States Court of Customs and Patent Appeals, May 23, 1958

*John D. Rode* for appellant.

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Murray Sklaroff,* trial attorney, of counsel), for the United States.

[Oral argument April 9, 1958, by Mr. Rode and Mr. Sklaroff]

Before JOHNSON, Chief Judge, and WORLEY, and RICH, Associate Judges.

RICH, Judge, delivered the opinion of the court:

The importer, plaintiff below, appeals from the judgment of the United States Customs Court overruling its protest.

[1] C. A. D. 683.

The merchandise involved was invoiced as "Safrol" and was assessed with duty at 45% ad valorem under paragraph 60 of the Tariff Act of 1930. The sole contention of the importer is that it is dutiable at 30% under the same paragraph as modified by the General Agreement on Tariffs and Trade.

The case was submitted on a stipulation of fact and no other evidence is before us. It was stipulated:

that the imported merchandise consists in fact of safrol, a natural or synthetic odoriferous or aromatic chemical, not mixed and not compounded and not containing more than ten per centum of alcohol.

Paragraph 60 is as follows:

PAR. 60. Perfume materials: Ambergris, castoreum, civet, and musk grained or in pods, 20 per centum ad valorem; anethol, citral, *geraniol*, heliotropin, ionone, rhodinol, *safrol*, terpineol, and all natural or synthetic odoriferous or aromatic chemicals, all the foregoing not mixed and not compounded, *and not specially provided for*, 45 per centum ad valorem; all mixtures or combinations, containing essential or distilled oils, or natural or synthetic odoriferous or aromatic substances, 40 cents per pound and 50 per centum ad valorem; *Provided*, That only materials not marketable as perfumery, cosmetics, or toilet preparations, and not containing more than 10 per centum of alcohol, shall be classified for duty under this paragraph: *Provided further*, That all of the foregoing materials containing more than 10 per centum of alcohol shall be classified for duty under paragraph 61 as toilet preparations. (Emphasis added.)

The General Agreement on Tariffs and Trade (hereinafter referred to as G.A.T.T.) modified paragraph 60 as follows:

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 60 | Perfume materials, not containing over 10 per centum of alcohol: | |
| | Ambergris, and musk grained or in pods___ | 10% ad val. |
| | *Geraniol*, not mixed and not compounded and *not specially provided for*_____ | 15% ad val. |
| | Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and *not specially provided for*: | |
| | Hydroxycitronellal_____ | 15% ad val. |
| | *Other* (except linalyl acetate)_____ | 30% ad val. |
| | All mixtures or combinations containing essential or distilled oils, or natural or synthetic odoriferous or aromatic substances_____ | 30¢ per lb. and 20% ad val. |
| | (Emphasis added.) | |

Study of the above shows that "safrol" was originally provided for in paragraph 60 at a rate of 45% ad valorem as one of a group of specifically named perfume materials, when not mixed and not compounded, "and not specially provided for." When, as here, a single

clause names several materials, followed by a class designation including those named materials,[1] followed immediately by the phrase "all the foregoing * * * not specially provided for," one would assume that the latter phrase had reference to possible provisions elsewhere in the Tariff Act and not to the specific provision in the very clause in which the phrase appears. This is simply a matter of the normal meaning of language.

It is appellant's position that the last provision for "other" in G.A.T.T. includes "safrol" and reduces the duty thereon to 30%.

The Government's position is that the reduced rate on "other" applies only to such natural or synthetic aromatic or odoriferous substances as are in fact not mixed and not compounded and not named in the second clause of paragraph 60 which contains the provision for "safrol." It argues that the provision for "safrol" in paragraph 60 is an *eo nomine* "specially provided for" designation which prevents it from coming under the G.A.T.T. reduced rate.

When we examine the involved paragraph and the amendment, we find "geraniol" to be specially set out in the same list in paragraph 60 (the same kind of an *eo nomine* provision) and also to be specifically named in G.A.T.T., followed by a "not specially provided for" clause. It thus appears to us from a literal reading of the statute and treaty that the n. s. p. f. clause in G.A.T.T. does not refer to *eo nomine* provisions in paragraph 60, and specifically that the n. s. p. f. clause after "other" does not refer to the *eo nomine* designation of safrol made in paragraph 60. If this is not true, then the n. s. p. f. clause after the G.A.T.T. provision for "geraniol" would preclude the 15 per centum provision therein from applying, since, as noted above, paragraph 60 *specially* provides for said compound. This would be patently absurd.

However, to be certain that our view is correct, we shall now examine the legislative history and such extraneous aids urged by the respective parties, as might lead to a different conclusion.

The Customs Court was of the opinion that a Presidential Proclamation relating to G.A.T.T., reported at 82 Treas. Dec. 305 which reads so far as pertinent:

Now, THEREFORE, be it known that I, HARRY S. TRUMAN, President of the United States of America, to the end that said trade agreement may be carried out and acting under the authority of the said sections 304 and 350 of the Tariff Act of 1930, as amended, do hereby proclaim, effective on and after January 1, 1948 and subject to the provisions of said protocol and to the exceptions and conditions set forth in subdivisions (a), (b), and (c) below, such modifications of existing duties and other import restrictions of the United States of America and such continuance of existing customs or excise treatment of articles imported into the United States of America as are specified or provided for in parts I, II, and III,

---

[1] A simple dictionary check shows that all of the named materials are in fact within the class designation "natural or synthetic odoriferous or aromatic chemicals."

annexes D, H, and I, and Part I of, and the general notes in, Schedule XX of said general agreement: * * *

and.a portion of the general notes following Schedule XX reading as follows:

1. The provisions of this Schedule shall be construed and given the same effect, and the application of collateral provisions of the customs laws of the United States to the provisions of this Schedule shall be determined, insofar as may be practicable, as if each provision of this Schedule appeared respectively in the statutory provision noted in the column at the left of the respective description of articles.

were of great weight in reaching a contrary conclusion. It is our view that this language sheds little light on our problem. While these items might be used as aids to statutory construction when the language of the involved statutes is ambiguous, it seems to us that their use in the instant case was such as to obscure an otherwise reasonably clear meaning.

The lower court said:

General note No. 1, contained in the general agreement and proclaimed by the President, indicates an intention to limit the sense or meaning of the language of the descriptions contained in Schedule XX of the agreement and proclamation to the sense or meaning which identical language in the tariff act bore before the agreement and proclamation.

While we agree with this statement of the law, we feel the lower court erred in applying it to the instant situation. The error was in assuming, apparently, that the words "natural or synthetic odoriferous or aromatic chemicals * * * not specially provided for" in paragraph 60 *excluded* safrol because it was specifically named in the same clause. We disagree with this construction and believe the quoted words *include* safrol because, after naming it and after saying "and all natural or synthetic odoriferous or aromatic chemicals," paragraph 60 says *"all the foregoing * * * not specially provided for."* (Emphasis ours.) Clearly this last phrase includes the specifically named materials. By the lower court's own reasoning, so do the corresponding words of G.A.T.T.

The Summaries of Tariff Information (1948) Vol. 1, part 4, page 155, referring to G.A.T.T., states:

The duty on safrol, however, was not affected by that agreement.

This is urged by the government as a controlling statement. This Summary was prepared in response to a resolution of the Ways and Means Committee of the House of Representatives to "rewrite or otherwise bring up to date * * * the commodity summaries of tariff information."

It appears to us that a compilation prepared by some unidentified person, for a congressional committee, *after* the involved laws have been enacted, is not necessarily controlling in determining the intent of the enactors of the statute or negotiators of a treaty. At best,

the Summary is an opinion or conclusion of some person or persons not necessarily reflecting the intent of the enactors or negotiators. It is *our* task to say what effect G.A.T.T. had on the duty on safrol and we are not influenced by the opinion of someone unknown, presumably based on no better information than we have. There is not in this case any question of legislative adoption of the opinion expressed in the Summaries, or of any treaty made on the basis thereof.

*Morganite, Inc.* v. *United States*, 42 C. C. P. A. (Customs) 207, C. A. D. 595, was relied on by the Customs Court and discussed by the parties in their briefs here. While we agree that the principles of statutory construction there and here involved are similar, we are of the opinion for the reasons above set forth, that these principles were misapplied by the lower court in the instant case.

The Japanese accession to the General Agreement on Tariffs and Trade, appearing at 90 Treas. Dec. 234, T. D. 53865, refers to "safrol" and states, "safrol, not mixed and not compounded, and not specially provided for" has been reduced to 30 per centum ad valorem. The Government bases an argument on this, stating that if the rate were already 30 per centum, "what possible purpose is the repetition of the reduction in T. D. 53865 [the Japanese accession]?" We believe appellant adequately overcomes this argument in the following statement from his brief:

It is a sufficient answer to this to point out that said Protocol provided expressly in Part I (b)(2)(i) that the application of the rates of duty shall be subject to the exception that no rate of duty shall be applied to a particular article "if, when the article is entered, or withdrawn from warehouse, for consumption—(2) more favorable customs treatment is prescribed for the article by any of the following then in effect: (i) a proclamation pursuant to said section 350 of the Tariff Act of 1930 as amended.

Thus the parties to this Agreement were clearly aware of the possibility that particular articles may have already been provided for at more favorable rates under prior agreements. It can also be urged that the failure of the Collector of Customs to recognize that safrol was reduced by the General Agreement on Tariffs and Trade led the negotiators to clarify the situation by inserting an even more specific enumeration, at the same rate, in the new protocol.

We therefore conclude that "safrol" is dutiable at 30% ad valorem under the involved amendment to the Tariff Act.

The judgment of the Customs Court is *reversed.*

O'CONNELL, J., was not present during the argument of this appeal, but, by agreement of counsel, did participate in the decision.

———

JOHNSON, Chief Judge, Dissenting.

I respectfully dissent from the decision of the majority. My views coincide with those aptly expressed in the unanimous opinion of the

Customs Court, written by Judge Mollison and concurred in by Chief Judge Oliver and Judge Wilson, which opinion reads as follows:

MOLLISON, JUDGE: As originally enacted, the Tariff Act of 1930, in paragraph 60 thereof, provided for duty at the rate of 45 per centum ad valorem on a series of specifically named perfume materials, when not mixed and not compounded and not specially provided for, to wit:

> * * * anethol, citral, geraniol, heliotropin, ionone, rhodinol, safrol, terpineol,

which series of named materials was followed by a general designation in the following language:

> * * * and all natural or synthetic odoriferous or aromatic chemicals.

By the Presidential proclamation relating to the General Agreement on Tariffs and Trade, reported in T. D. 51802, the rates of duty applicable were reduced as follows:

> Perfume materials, not containing over 10 per centum of alcohol:
>
> *       *       *       *       *       *
>
> Geraniol, not mixed and not compounded, and not specially provided for, 15% ad val.
> Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:
>     Hydroxycitronellal_____ 15% ad val.
>     Other (except linalyl acetate)_____ 30% ad val.

The merchandise at bar was stipulated by counsel to consist of "safrol, a natural or synthetic odoriferous or aromatic, not mixed and not compounded and not containing more than ten per centum of alcohol." It was assessed with duty at the rate of 45 per centum ad valorem, on the theory that the Presidential proclamation relating to the general agreement did not alter the tariff rate theretofore applicable to safrol. It is claimed to be entitled to duty at the rate of 30 per centum ad valorem on the theory that it is a "Natural or synthetic odoriferous or aromatic chemical[s], not mixed and not compounded, and not specially provided for: Other [than hydroxycitronellal or linalyl acetate]" and is covered by the provision therefor in the Presidential proclamation.

Citing the well-known rule of statutory construction that first resort must be had to the words actually used in the statute itself, plaintiff points out that the actual language used in the proclamation, to wit:

> Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:
>
> *       *       *       *       *       *       *

Other [than hydroxycitronellal and linalyl acetate] is a description which, according to the stipulated facts, embraces safrol.

Various other arguments are made pro and con on behalf of the parties, based upon such matters as the effect of the "not specially provided for" clause; of the position of a related provision; of statements made in the Summaries of Tariff Information, 1948, and of subsequent trade agreements, none of which we deem to be so clearly dispositive of the matter as general note No. 1 to Schedule XX of the general agreement, 82 Treas. Dec. 316, cited by both parties in the briefs.

At page 314 of the Presidential proclamation relating to the general agreement, as reported in 82 Treas. Dec. 305, the President specifically put into effect the provisions of the general notes in Schedule XX of the said agreement by the use of the following language:

> Now, THEREFORE, be it known that I, HARRY S. TRUMAN, President of the United States of America, to the end that said trade agreement may

be carried out and acting under the authority of the said sections 304 and 350 of the Tariff Act of 1930, as amended, do hereby proclaim, effective on and after January 1, 1948 and subject to the provisions of said protocol and to the exceptions and conditions set forth in subdivisions (a), (b), and (c) below, such modifications of existing duties and other import restrictions of the United States of America and such continuance of existing customs or excise treatment of articles imported into the United States of America as are specified or provided for in Parts I, II, and III, annexes D, H, and I, and part I of, *and the general notes* in, Schedule XX of said general agreement: * * * [Italics added.]

The said general notes follow Schedule XX, representing concessions by the United States, and quite obviously were intended by the negotiators of the agreement and by the President, in his proclamation, to be considered rules of interpretation thereof.

General note No. 1 reads as follows:

1. The provisions of this Schedule shall be construed and given the same effect, and the application of collateral provisions of the customs laws of the United States to the provisions of this Schedule shall be determined, insofar as may be practicable, as if each provision of this Schedule appeared respectively in the statutory provision noted in the column at the left of the respective description of articles.

In *Morganite, Inc.* v. *United States*, 42 C. C. P. A. (Customs) 207, C. A. D. 595, the foregoing language was under consideration by our appellate court, and it was pointed out in the opinion that, if the provisions of the schedule were to be construed as if they actually appeared in the respective provisions of the Tariff Act of 1930, "then it follows that identical phraseology must be given identical meaning."

Translated so as to fit the situation in the case at bar, it, therefore, appears that the description in Schedule XX opposite the enumeration of paragraph 60 of the Tariff Act of 1930, which reads—

Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:

must be given the same meaning as the words

* * * natural or synthetic odoriferous or aromatic chemicals, * * * not mixed and not compounded, and not specially provided for,

found in paragraph 60 of the statute, as it existed prior to the issuance of the proclamation.

At that time, those words did not embrace safrol, which was covered by a separate *eo nomine* provision.

It is noted that the leading opinion in the *Morganite, Inc.*, case, *supra*, was not concurred in by a majority of the judges of our appellate court. It does not appear, however, that any disagreement existed in connection with the point with reference to general note No. 1, *supra*. Moreover, in support of the point made, the leading opinion cites *B. Altman & Co.* v. *United States*, 224 U. S. 583, a case involving a somewhat analogous situation.

In that case, the issue involved the correct rate of duty applicable to certain bronze statuary. In paragraph 454 of the Tariff Act of 1897, the rate on statuary was fixed at 20 per centum ad valorem. The paragraph, however, contained a condition reading as follows:

* * * but the term "statuary" as used in this Act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as is the professional production of a statuary or sculptor only.

The reciprocal commercial agreement with France, made under authority of section 3 of the Tariff Act of 1897, authorized the importation of "statuary" at the rate of 15 per centum ad valorem.

The article involved was a bronze bust, cast in a foundry by artisans, and upon which the artist had done little or no retouching. It was, however, within the common or popular meaning of the term "statuary." Classification for duty had been as a manufacture of metal at 45 per centum ad valorem, and it was the contention of the importers that the word "statuary", as found in the reciprocal agreement and proclamation thereof by the President, should receive its popular construction and not be subject to the condition prescribed in paragraph 454, inasmuch as that condition did not appear either in the reciprocal agreement or the Presidential proclamation thereof.

The Supreme Court, however, was of the opinion that the definition contained in the statute could not be ignored and pointed out that—

> \* \* \* the agreement was made under the authority and in accordance with § 3 of the tariff act of 1897, in which very act the term statuary, as used therein, was specifically defined, as we have already stated.

We think the principle of that case is applicable here. General note No. 1, contained in the general agreement and proclaimed by the President, indicates an intention to limit the sense or meaning of the language of the descriptions contained in Schedule XX of the agreement and proclamation to the sense or meaning which identical language in the tariff act bore before the agreement and proclamation.

So construed, the provision in paragraph 60 of the tariff act, as amended by the proclamation, does not include safrol. \* \* \*